**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| DEBRA T. ROBINSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | 1 :11-CV-135 (WLS) |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on October 4, 2011, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits her ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

***Administrative Proceedings***

Plaintiff filed an application for disability insurance benefits and Supplement Security Income benefits on April 23, 2003. (*See* Tr. 25). Her claim was denied initially and upon reconsideration. (Tr. 876-883). A hearing was held before an Administrative Law Judge ("ALJ") on October 19, 2005, and in a hearing decision dated December 22, 2005, the ALJ determined

that Plaintiff was not disabled. (Tr. 910, 342-51). The Appeals Council remanded the case to

the ALJ to consolidate the case with subsequently filed applications. (Tr. 358-62) On remand, a

video hearing was held before the ALJ who presided from Savannah, Georgia on August 19,

2009. (Tr. 25, 933). Thereafter, in a hearing decision dated September 23, 2009, the ALJ

determined that Plaintiff was not disabled. (Tr. 25 - 44). The Appeals Council subsequently

denied review and the ALJ's decision thereby became the final decision of the Commissioner.

(Tr. 11-14).

**Statement of Facts and Evidence**

The Plaintiff was forty-three (43) years of age at the time of the second hearing before the

ALJ, and alleged disability since May 15, 2001, due to right arm problems, bursitis, and "mental

nerve problems". (Tr. 953, 409, 414). Plaintiff has a high school education, and past relevant

work experience as a sewing machine operator. (Tr. 953, 42).

As determined by the ALJ, Plaintiff suffers from the following severe impairments:

"borderline intellectual functioning (BIF); depressive disorder, single episode; degenerative disc

disease of the lumbar spine; and, bursitis of the right shoulder[.]" (Tr. 27). The ALJ found that

Plaintiff did not have an impairment or combination thereof that met or medically equaled a

listed impairment, and she remained capable of performing work as follows:

> the claimant has the residual functional capacity to perform light
> work. She can lift 10 pounds occasionally and 10 pound (sic)
> frequently. She can sit for 2 hours continuously and about 6 hours
> total during an 8-hour workday. She can stand and walk for 45
> minutes to an hour continuously and for about 6 hours total during
> an 8-hour workday. She should avoid climbing, ladders, ropes,
> and scaffolding. She should also avoid overhead reaching with her
> right arm. She is limited to occasional knelling (sic), crawling, and
> crouching. She should avoid fast pace assembly work and has
> some limitation with regard to dealing with the public in that she
> should avoid extensive contact with the public, but can have causal
> (sic) interaction with the public.

(Tr. 40). Although Plaintiff could not return to her past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy. (Tr. 42 - 44).

## DISCUSSION

Plaintiff alleges that the ALJ erred by relying on an insufficient hypothetical question, by failing to properly consider the medical evidence when determining the Plaintiff's Residual Functional Capacity ("RFC"), and by failing to properly evaluate the opinions of treating physicians. (Doc. 10). Plaintiff also alleges that the Appeals Council erred when it denied review of the ALJ's decision.

### A.  Step Five Analysis

#### Vocational Expert's Testimony

Plaintiff asserts that the ALJ erred by failing to present a complete hypothetical question to the Vocational Expert ("VE"), in that he failed to include all the limitations contained in Plaintiff's Residual Functional Capacity ("RFC") and contained within the record. (Doc. 10). The Commissioner contends that any error is harmless, because the job of surveillance system monitor does not require the excluded limitations. (Doc. 11, p. 16).

Once a claimant proves at Step Four that she can no longer perform her past relevant work, the burden shifts to the Commissioner to establish that other jobs exist in the national economy that the claimant can perform. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The testimony of a VE may provide the basis for a finding by the ALJ that Plaintiff can still perform other jobs at Step Five. *Id.* "In order for a vocational expert's testimony to constitute substantial evidence [for a finding at Step Five], the ALJ must pose a hypothetical question which comprises

4

all of the claimant=s impairments.@ *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

The ALJ found Plaintiff was capable of performing light work with the following additional limitations:

> [s]he can lift 10 pounds occasionally and 10 pound (sic) frequently. She can sit for 2 hours continuously and about 6 hours total during an 8-hour workday. She can stand and walk for 45 minutes to an hour continuously and for about 6 hours total during an 8-hour workday. She should avoid climbing, ladders, ropes, and scaffolding. She should also avoid overhead reaching with her right arm. She is limited to occasional knelling (sic), crawling, and crouching. She should avoid fast pace assembly work and has some limitation with regard to dealing with the public in that she should avoid extensive contact with the public, but can have causal (sic) interaction with the public.

(Tr. 40). During the second ALJ hearing, the ALJ posed the following hypothetical to the VE:

> [A]ssume we have an individual who's approximately, at this time, 43 years of age; has a 12th grade education, special ed, with reading and writing abilities at about the sixth/seventh grade level; and past relevant work as a sewing machine operator. This individual would be able to lift and carry 20 pounds occasionally, 10 pounds frequently; be able to sit two hours continuously, eight hours total; walk or stand 45 minutes to one hour continuously, four to six hours total; would be limited to repetitive, short-cycle work, mostly SVP: 1 and 2; would have to avoid fast-paced work such as assembly . . . line work . . . ; would have a moderate limitation in dealing with the public, and moderate is defined as that there's some limitation in the area, but would be able to perform satisfactorily.

(Tr. 961-62).

The limitations assessed by the ALJ and the hypothetical posed to the VE differ as follows:

- The ALJ limited Plaintiff to lifting and carrying only 10 pounds occasionally and frequently, and the hypothetical limited Plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds frequently.

- The ALJ limited Plaintiff to sitting about 6 hours in an 8-hour workday, whereas the hypothetical limited Plaintiff to sitting a total of 8 hours.

- The ALJ found Plaintiff should avoid overhead reaching with her right arm, and the

hypothetical question does not contain any reaching limitations.

- The ALJ found Plaintiff should avoid climbing, ladders, ropes, and scaffolding, whereas the hypothetical does not contain any environmental limitations.

- The ALJ limited Plaintiff to occasional kneeling, crawling, and crouching, but the hypothetical does not contain any postural limitations.

The VE testified that the Plaintiff could perform work as a surveillance system monitor and cloth stock sorter (Tr. 962, 964), and the ALJ relied on this testimony in determining that there are significant jobs in the national economy that Plaintiff can perform.  (Tr. 43).

In *Dial v. Commissioner of Social Security*, 403 Fed. Appx. 420, 421 (11th Cir. 2010) (unpublished), the ALJ relied exclusively on the testimony of a VE to determine if Plaintiff could perform jobs in the national economy.  However, "the ALJ failed to include all of [the claimant's] employment limitations in the hypothetical questions posed to the VE." *Id.*  As the hypothetical did not contain all the limitations, "the VE's testimony did not constitute substantial evidence upon which the ALJ could rely."  *Id.* (citing *Jones*, 190 F.3d at 1229; *Pendley v. Heckler*, 767 F.2d 1561, 1562-63 (11th Cir. 1985)).  In *Dial*, the Commissioner maintained that the error was harmless because the job description of the job identified by the VE would not require the claimant to perform job duties that were inconsistent with the claimant's employment limitations. *Id.*  The court held that, regardless of the job description, the ALJ "relied only on the testimony of the VE, who was not instructed on all of [the claimant's] limitations", and thus, the court could not find the error was harmless. *Id.*

Herein, as in *Dial*, the ALJ relied exclusively on the testimony of a VE to determine if there were jobs in the national economy that Plaintiff could perform; however, the hypothetical posed to the VE did not contain all of Plaintiff's employment limitations.  As the ALJ relied solely on testimony from the VE, who was not instructed on all of Plaintiff's limitations, the

6

undersigned finds that the ALJ's decision is not supported by substantial evidence, and that this error is not harmless.  Accordingly, it is the recommendation of the undersigned that this case be remanded so that the ALJ can base his Step Five analysis on a complete hypothetical question.

*Evaluation of the Evidence*

Plaintiff also contends that the ALJ "overlooked the significance of the perceptual-motor deficits" in determining that Plaintiff could perform the job of cloth stock sorter. (Doc. 10). According to Plaintiff, perceptual-motor skills are "movement related skills" such as "hand-eye coordination, body-eye coordination, auditory language skills, postural adjustment, and visual-auditory skills."  (Doc. 10, p. 20).  The Court notes that Plaintiff does not state what, if any, perceptual-motor deficits keep her from performing the job of a cloth stock sorter, but merely states that "[e]very psychologist who tested [Plaintiff's] perceptual-motor functioning found significant deficits[.]" (*Id.*).

Plaintiff states that the job of cloth sorter requires constant reaching and handling, occasional fingering, and overall manual-dexterity.  (*Id.*).  The ALJ determined that Plaintiff should avoid overhead reaching with her right arm, which appears to be the only perceptual-motor deficit in her RFC that impacts the job of cloth stock sorter.  (Tr. 40).  The undersigned has found that the ALJ erred by failing to include this limitation in the hypothetical posed to the VE, and has recommended that the case be remanded so that the ALJ can include this limitation in his Step Five analysis.  Thus, the Commissioner will be reconsidering Plaintiff's ability to work in light of her perceptual-motor deficit.

**B. Residual Functional Capacity**

Plaintiff states that the ALJ's determination of her RFC was not supported by substantial evidence because the ALJ failed to consider Plaintiff's obesity, failed to include all the

limitations identified by Drs. Lee, Griffin, and Beaty, and failed to consider Plaintiff's reasoning limitations. (Doc. 10).

A claimant's RFC is "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The determination of the RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect her ability to perform work-related activities. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546(c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

*Obesity*

Plaintiff alleges that the ALJ failed to evaluate Plaintiff's obesity as it affects Plaintiff's pain caused by her lumbar degenerative disc disease. (Doc. 10). "When a claimant alleges several impairments, the ALJ has a duty to consider the impairments in combination and determine whether the combined impairments render Plaintiff disabled." *Sneed v. Barnhart*, 214 Fed. Appx. 883, 887 (11th Cir. 2006) (citing *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)). The ALJ can satisfy his duty to consider all of the impairments in combination by "stating that he considered whether the claimant suffered from any impairment or combination of impairments." *Id.*; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (finding that the ALJ's decision stating that the plaintiff did not have an impairment or combination of impairments that met a listed impairment constituted

evidence that the ALJ considered the plaintiff's impairments); *Warren v. Astrue*, 2010 WL 3294186,*6 (N.D. Ga. July 14, 2010) ("the Eleventh Circuit has also held that the statement by the ALJ that she considered the impairments in combination is sufficient to show that the ALJ considered the combined effect of [the plaintiff's] impairments"); *Fashaw v. Astrue*, 2011 WL 1237578, *9 (M.D. Fla. Feb. 15, 2011) ("The Eleventh Circuit has made clear that an ALJ's statements and findings may show a plaintiff's impairments have been considered in combination").

The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[.]" (Tr. 38). The ALJ stated that he determined Plaintiff's RFC "[a]fter careful consideration of the entire record," and when determining the RFC, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" (Tr. 40). The decision by the ALJ provides evidence that he properly considered any limitations that the obesity may have caused to Plaintiff's degenerative disc disease when determining the RFC. Therefore, the ALJ did not err.

*Failure to include all limitations*

Plaintiff alleges that the ALJ erred when he gave credit to the opinions of Drs. Lynn Lee and Jason Griffin, but failed to include all the opined limitations in the RFC. (Doc. 10). Plaintiff also maintains that the ALJ erred in the RFC determination by failing to find Plaintiff disabled after crediting Dr. Beaty's opinion, which included disabling impairments.

*Dr. Lee*

Dr. Lee, an examining physician, completed a disability examination of Plaintiff in

October of 2007.  Therein, Dr. Lee opined, among other things, that Plaintiff could occasionally reach overhead and in all directions, and was limited to occasional handling.  (Tr. 628).

The evidence shows that, in March of 2002, a radiologist report noted "[v]ery minimal hypertrophic change of the AC joint" in Plaintiff's right shoulder.  (Tr. 137).  The results were otherwise normal.  (Tr. 137).  On January 1, 2003, an initial evaluation for physical therapy showed Plaintiff was "able to lift right UE [upper extremities] overhead for ADLS [activities of daily living]."  (Tr. 123).  In April of 2003, treatment notes stated that Plaintiff "shows good movement of the shoulder, about 160 degrees of forward flexion abduction, some mild pain on overhead movement, no gross weakness, good strength, very little pain with impingement sign. She has no radicular problems."  (Tr. 156).

Plaintiff was again examined in January of 2005 for complaints for pain in her back, leg, and shoulders.  The examination showed normal sensation, good strength, no weakness, numbness, or swelling, and good joint motion.  (Tr. 336).  Dr. Griffin opined that Plaintiff was unlimited in her reaching, including overhead and handling, in 2008.  (Tr. 697).  In March of 2009, Dr. Griffin submitted another Medical Source Statement wherein he opined that Plaintiff was limited in her reaching due to her right shoulder pain.  (Tr. 816).

In his decision, the ALJ stated that Plaintiff should "avoid overhead reaching with her right arm."  (Tr. 40).  The ALJ discussed the evidence contained in the record, including Dr. Lee's opinion, when determining Plaintiff's abilities to reach and handle.  As the ALJ's RFC decision regarding Plaintiff's ability to reach and handle is supported by substantial evidence, the ALJ did not commit reversible error. *See Driggers v. Astrue*, 2012 WL 4478963, *4 (N.D. Ala., Sept. 20, 2012) ("[T]he ALJ's RFC finding need not be identical to a medical source statement from a physician, only supported by substantial evidence." ).

10

*Dr. Griffin*

Plaintiff alleges that the ALJ failed to include Dr. Jason Griffin's, a physician at Primary Care of Southwest Georgia, limitation that Plaintiff could sit "less than about 6 hours in an 8 hour workday". (Doc. 10, Tr. 696). The ALJ's opinion limited Plaintiff to sitting for 2 hours continuously and about 6 hours total during an 8 hour workday. (Tr. 40). The record shows that Dr. Lee opined that Plaintiff could sit 6 hours total with normal breaks in an 8 hour workday. (Tr. 628). Additionally, a Physical Residual Functional Capacity Assessment found that Plaintiff could sit, with normal breaks, for a total of "about 6 hours in an 8-hour workday". (Tr. 517).

The ALJ is not required to include the exact limitations stated by Dr. Griffin in the RFC. *See Driggers*, 2012 WL 4478963 at *4. There is substantial evidence to support the finding that Plaintiff could sit for about 6 hours during an 8 hour workday, and as such, the ALJ did not err in his determination of Plaintiff's sitting limitations.

*Dr. Beaty*

Plaintiff states that the ALJ gave weight to Dr. Beaty's opinions about Plaintiff's mental work impairments; however, the ALJ failed to include these impairments in Plaintiff's RFC. (Doc. 10). Dr. Beaty, a treating physician, completed a Psychiatric Review Technique, wherein he opined that Plaintiff met Listing 296-22, Major Depression single episode –moderate. (Tr. 282). He also found that Plaintiff had moderate difficulties maintaining social functioning and maintaining concentration, persistence, or pace, had moderate restrictions of activities of daily living, and had no episodes of decompensation. (Tr. 292).

In a Medical Source Statement of Ability to Do Work-Related Activities (Mental), Dr. Beaty determined Plaintiff had good ability to remember locations and work-like procedures, to understand and remember short, simple instructions, to understand and remember detailed

instructions, and to make simple work-related decisions. (Tr. 295).  Plaintiff had fair ability to carry out short, simple instructions, to perform activities within a schedule, to maintain regular attendance and be punctual, to sustain an ordinary routine without special supervision, and to work with or near others without being distracted by them.  (Tr. 295).  Finally, Dr. Beaty opined that Plaintiff had poor ability (meaning no useful ability to function) to carry out detailed instructions, to maintain attention and concentration for extended periods of time, to complete a normal workday or workweek, and to perform at a consistent pace.  (Tr. 295).

When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments.  20 C.F.R. § 404.1527(d)(2).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Further, the ALJ must state with particularity the weight given to medical opinions. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

The ALJ outlined Dr. Beaty's opinions and stated that "Dr. Beatty's (sic) opinions regarding the claimant's mental capacity for work activity is given weight in this decision, because his opinions are consistent with the record of evidence."  (Tr. 32).  However, in the RFC assessment, the ALJ only found that Plaintiff should avoid "fast pace assembly work" and extensive contact with the public.  (Tr. 40).  The RFC assessment did not include limitations regarding Plaintiff's ability to carry out instructions, to maintain concentration and attention, or to perform at a consistent pace, areas in which Dr. Beaty found Plaintiff had no useful ability to

function.  The ALJ's decision does not explain the differences between the ALJ's findings and the opinion of Dr. Beaty.  Further, as a result of the ALJ's failure to articulate the particular weight given to Dr. Beaty's opinion, the Court cannot determine if the ALJ properly considered the limitations opined by Dr. Beaty.

As the ALJ did not state with particularity the weight given to Dr. Beaty's opinion and as there is a lack of adequate explanation regarding the differences between the RFC found by the ALJ and Dr. Beaty's opinion, the ALJ's decision is not supported by substantial evidence.  *See Sharfarz*, 825 F.2d at 279 (an ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor"); *Perales v. Astrue*, 2012 WL 3744514, *6 (M.D. Fla., Aug. 29, 2012) (finding the ALJ's decision was not supported by substantial evidence when the ALJ did not reconcile inconsistencies between a doctor's RFC and the ALJ's RFC.  On remand, the ALJ should clearly articulate the particular weight given to Dr. Beaty's opinion of Plaintiff's mental limitations.  After specifying the weight given to Dr. Beaty's opinion, the ALJ shall reexamine his RFC and address any differences between his RFC and Dr. Beaty's opinion.

*Reasoning Limitations*

Plaintiff also maintains that the ALJ failed to include Plaintiff's verbal and general reasoning deficits in the RFC and the hypothetical posed to the VE.  (Doc. 10).  Specifically, Plaintiff contends that her IQ scores are artificially inflated, and she cannot perform the job of surveillance system monitor.  "The Commissioner is not required to accept a claimant's I.Q. scores . . . and may reject scores that are inconsistent with the record." *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998).  The test results should be examined to assure consistency with Plaintiff's daily activities and behaviors.  *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986).

Thus, to determine if scores are invalid, the ALJ may rely on external evidence of invalidity, such as a claimant's participation in activities inconsistent with the IQ scores. *See id.*

The evidence shows that in 1983, when Plaintiff was 17 years old, a school psychologist found that Plaintiff's "estimated mental age equivalent is 12-years, 3 months and grade expectancy level is 7.1." (Tr. 325). Plaintiff's cognitive reading grade level was 7.0, her math grade level was 6.4, and her spelling grade level was 5.0. (Tr. 328). On December 15, 2000, Plaintiff's verbal IQ score was 83, her performance IQ score was 75, and her full scale IQ score was 79, which placed Plaintiff in a borderline range of intellectual functioning. (Tr. 334).

In 2007, Dr. Joe Garmon, a consultative examiner, found that Plaintiff's full scale IQ score was 66, which "falls in the Mild Mental Retardation range." (Tr. 618). Dr. Garmon found the IQ score to be an "underestimate [of Plaintiff's] current intellectual ability which [he] believed to fall in the Borderline range." (Tr. 618-19). Dr. Garmon opined that Plaintiff appeared "capable of understanding and retaining simple instructions", that she had adequate concentration and task persistence to carry out simple instructions and short routines, and her social interactions were within normal limits. (Tr. 619).

Despite Plaintiff's low IQ test scores, the ALJ noted that her past work activity indicated that the psychological reports underestimated Plaintiff's abilities. (Tr. 38). The evidence shows that Plaintiff worked "part-time on a call-in basis as a 'substitute teacher' (possibly paraprofessional)" at an elementary school, and worked occasionally at the "RYDC program as a substitute teacher". (Tr. 333, 916). She also worked as a packer in a pickle factory, and she worked as a seamstress for 10 years. (Tr. 333). The ALJ found it "difficult to reconcile allegations of significant subaverage general intellectual functioning with deficits in adaptive function[ing]" with Plaintiff's testimony that she was a substitute teacher for two years, wherein

"she was responsible for the welfare and safety of school age children."  (Tr. 38).

The record also contains evidence that Plaintiff's daily activities demonstrated that the IQ scores were an underestimate of Plaintiff's abilities.  During a psychological evaluation with Dr. Garmon, Plaintiff informed Dr. Garmon that she "is able to bathe, dress, and feed herself without assistance", but sometimes needs help with zippers and her bra.  (Tr. 616).  Plaintiff does laundry without difficulty, she sometimes cooks, and she vacuums and dusts tables.  (Tr. 616).  Plaintiff manages her own finances, attends church twice a month, and talks to her friends on the phone.  (Tr. 616).  She likes to go out to eat, and sings with the choir twice a month.  (Tr. 616).

The ALJ found that Plaintiff's IQ scores were an underestimate of her level of functioning in light of other evidence in the record.  *See Popp*, 779 F.2d at 1500 (finding substantial evidence to support the ALJ's finding that results of an IQ test were incredible because they were inconsistent with other evidence).  As there is substantial evidence to support the ALJ's finding that Plaintiff's IQ scores were not an accurate representation of Plaintiff's ability given her past work history and activities of daily living, the ALJ did not commit reversible error when he did not include reasoning limitations in the RFC or hypothetical question.

## C. Physicians' Opinions

Plaintiff alleges that the ALJ failed to give proper weight to the opinions of Drs. Beaty, Vandewalle, Wager, and Frady when determining Plaintiff's RFC.  (Doc. 10).  Plaintiff states that "all doctors from the treating mental health facility, Georgia Pines –psychiatrist Dr. Beaty, psychiatrist Dr. Vandewalle, and psychologist Dr. Wager –as well as consultative psychologist Dr. Frady –found [Plaintiff] mentally disabled."  (Doc. 10, p. 22).  Plaintiff, therefore, appears to be contending that the ALJ erred by not giving substantial weight to the opinions that found Plaintiff disabled.

The ultimate responsibility for deciding if a claimant is disabled is reserved for the Commissioner. *See* 20 C.F.R. § 416.927(d). "An ALJ is not required to give significance to opinions of any medical provider where the opinion relates to issues reserved solely for determination by the Commissioner; this includes any physician's opinion which state that he or she finds the claimant disabled or that he finds that the claimant's impairments meet or equal any relevant Listing." *Cole v. Astrue*, 2008 WL 4003379, *3 (M.D. Ga. Aug. 25, 2008) (*citing* 20 C.F.R. § 416.927(e)(1) (2), & (3); SSR 96-5p). The ALJ was not required to give any special significance to the disability determinations made by Drs. Beaty, Vandewalle, Wager, and Frady. Accordingly, the ALJ did not err.

**D. Appeals Council Decision**

Plaintiff also maintains that the Appeals Council erred by denying review of new evidence, specifically a psychological evaluation by Dr. Karl Willers. (Doc. 10). The Appeals Council will review an ALJ's decision only when it determines, after review of the entire record, including the new and material evidence, that the decision is contrary to the weight of the evidence currently in the record. 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b). The new evidence must relate to the period on or before the ALJ's hearing decision. *Id.* "In order to prevail on a claim that remand is appropriate, a claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (internal quotations omitted).

Herein, the Appeals Council stated that it considered the additional evidence supplied by Plaintiff, including the psychological evaluation by Dr. Karl Willers, and found that the

information did not provide a basis for changing the ALJ's decision. (Tr. 11-12, 14). Dr. Willers reported that Plaintiff had a full scale IQ of 59, and had a 3.5 grade equivalent for reading, a 4.3 grade equivalent for spelling, and a 3.2 grade equivalent for math. (Tr. 904). Plaintiff scored 27 out of 30 on the Mini Mental State Exam. (Tr. 903). Dr. Willers opined that Plaintiff functions in the mild mental retardation range of intelligence. (Tr. 904).

The record reviewed by the ALJ contained the results from at least four prior IQ tests that were administered to Plaintiff. (Tr. 323, 334, 529, 617). The ALJ found that the IQ scores were an underestimate of Plaintiff's abilities based on her activities of daily living and her past work history. (*See* Tr. 38). Dr. Willers' report does not contain new, noncumulative evidence, as the ALJ has properly consider several other reports which are based on Plaintiff's IQ scores. Further, the evidence is not material, in that, there is not "a reasonable possibility" that the ALJ's decision would change on remand. *See Hyde v. Bowen*, 823 F.2d at 459. Thus, the Appeals Council did not err.

Plaintiff also maintains that the Appeals Council erred by summarily denying review without providing specific reasons for the denial. "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). "Thus, because a reviewing court must evaluate the claimant's evidence anew, the [Appeals Council] is not required to provide a thorough explanation when denying review." *Burgin v. Comm'r of Soc. Sec.*, 420 Fed. Appx. 901, 903 (11th Cir. 2011) (finding the Appeals Council considered and incorporated the additional evidence, which had little probative weight, and was not required to explain its denial of review); *compare with Flowers v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 735, 746 (11th Cir 2011)

(remanding when the Appeals Council did not articulate specific findings when the new evidence was from a treating physician and contained an RFC assessment "that was supported by significant clinical findings from three examinations performed" by the treating physician).  The new evidence appears to have little probative weight; thus, the Appeals Council did not err when it did not provide a detailed explanation for denying review.

The new evidence provided in the report by Dr. Willers did not present evidence that would raise a reasonable possibility that the ALJ's decision regarding Plaintiff's mental limitations would change.  The Appeals Council did not err when it did not vacate the ALJ's decision or provide a more detailed explanation for its denial of review.

## CONCLUSION

As part of the Commissioner=s decision in this matter is not supported by substantial evidence, it is the recommendation of the undersigned that the Commissioner=s decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405(g).  It is the undersigned's recommendation that, on remand, the ALJ pose a hypothetical question to the VE that contains all limitations found by the ALJ, and then determine if Plaintiff is still capable of work at Step Five.  Second, the ALJ should clearly articulate the particular weight given to Dr. Beaty's opinion of Plaintiff's mental limitations.  After specifying the weight given to Dr. Beaty's opinion, the ALJ shall reexamine his RFC and address any differences between his RFC and Dr. Beaty's opinion.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED** this 12th day of February, 2013.

s/ ***THOMAS Q. LANGSTAFF***
**UNITED STATES MAGISTRATE JUDGE**